[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Colt's Neck Homeowners Assn. v. Franklin Cty. Bd. of Commrs.*, Slip Opinion No. 2026-Ohio-2751.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2751

COLT'S NECK HOMEOWNERS ASSOCIATION, APPELLEE, *v.* FRANKLIN COUNTY, OHIO BOARD OF COMMISSIONERS ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Colt's Neck Homeowners Assn. v. Franklin Cty. Bd. of Commrs.*, Slip Opinion No. 2026-Ohio-2751.]**

*Appeals—R.C. 6133.10(A) provides that any appeal from an order of a joint board of county commissioners that does not involve claims for damages or compensation must be heard by a panel of judges consisting of one judge of the court of common pleas from each of the counties affected by a proposed joint-county ditch improvement—Under R.C. 6131.25(A) and 6133.03(D), any affected landowner may appeal any order issued by a joint board of county commissioners to a court of common pleas, including an order directing a county engineer to proceed with preparing reports, plans, and schedules needed for a proposed joint-county ditch improvement—A landowner whose procedural rights have allegedly been violated at the first hearing on a proposed joint-county ditch improvement is an affected*

*landowner with standing to appeal the order resulting from that hearing—Jurisdictional-priority rule—An affected landowner may file an appeal from an order of a joint board of county commissioners in any of the counties in which the proposed joint-county ditch improvement will occur—Homeowners association was an affected landowner with standing and statutory authority to appeal joint board of county commissioners' order issued after the first hearing on proposed joint-county ditch improvement, and association's appeal should have been heard by a joint panel of common-pleas-court judges from each of the counties affected by the ditch improvement—Judgment of court of appeals, which held that trial court had erred under R.C. 6133.10(A) in failing to convene a panel of common-pleas-court judges to hear homeowners association's appeal from joint board of county commissioners' order and that association had standing and statutory authority to appeal joint board's order, affirmed.*

(Nos. 2025-0693 and 2025-0980—Submitted March 25, 2026—Decided July 22, 2026.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County, No. 24AP-273, 2025-Ohio-1236.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**KENNEDY, C.J.**

{¶ 1} This is a discretionary appeal from a judgment of the Tenth District Court of Appeals and a certified-conflict case in which we have recognized that a conflict exists between the Tenth District's judgment and a judgment of the Fifth District Court of Appeals. The appellate-court cases arise from a petition to improve a ditch that flows from Licking County—in Ohio's Fifth Appellate

District—into Franklin County—in Ohio's Tenth Appellate District. At the conclusion of the statutorily required first hearing on the petition, a joint board consisting of county commissioners from Licking and Franklin Counties issued an order directing appellant the Franklin County Engineer to proceed with preparing reports, plans, and schedules needed for the proposed ditch improvement.

**{¶ 2}** Neither R.C. Ch. 6131 nor R.C. Ch. 6133 provide any guidance regarding in which county's common pleas court an appeal challenging an order to proceed on a multicounty ditch-improvement petition must be filed. The statutes in these chapters of the Revised Code do not say, for example, that an appeal must be filed in the county where the affected landowner's property is located, as is the case for claims for "compensation or damages" from a joint-county ditch improvement under R.C. 6133.09(C).

**{¶ 3}** Appellee, the Colt's Neck Homeowners Association ("Colt's Neck"), appealed the joint board's order to the Licking County Court of Common Pleas about two hours before it filed a second appeal of the order in the Franklin County Court of Common Pleas. Both appeals were dismissed. *Colt's Neck Homeowners Assn. v. Franklin Cty. Bd. of Commrs.*, Licking C.P. No. 23 CV 1462, 1 (Apr. 25, 2024); Franklin C.P. No. 23CVF-12-9463, 3 (Mar. 28, 2024).

**{¶ 4}** Colt's Neck appealed both judgments of dismissal. The Fifth District dismissed Colt's Neck's appeal, concluding that the Licking County Court of Common Pleas was not required to convene a panel of common-pleas-court judges from Licking and Franklin Counties to hear the appeal from the joint board's order, that there was no right to appeal the joint board's order that was issued after its first hearing, and that the matter was not ripe for appeal. *Colt's Neck Homeowners Assn. v. Franklin Cty. Bd. of Commrs.*, 2025-Ohio-113, ¶ 11, 13-18, 20-21 (5th Dist.).

**{¶ 5}** In contrast, the Tenth District reversed the judgment of the Franklin County Court of Common Pleas, holding that the trial court had erred under R.C. 6133.10(A) in failing to convene a panel of common-pleas-court judges from

Licking and Franklin Counties to hear the appeal from the joint board's order and that Colt's Neck had standing and statutory authority to appeal the joint board's order. 2025-Ohio-1236, ¶ 19-20, 23, 29-30 (10th Dist.). The Tenth District remanded the matter to the Franklin County Court of Common Pleas to conduct further proceedings under R.C. 6133.10(A). *Id.* at ¶ 30.

{¶ 6} Appellants, the Licking County Board of Commissioners, the Franklin County Board of Commissioners, and the Franklin County Engineer, appealed the Tenth District's judgment, and the Tenth District certified that a conflict exists between its judgment and that of the Fifth District. We agreed that a conflict exists. 2025-Ohio-3107. No party appealed the Fifth District's judgment.

{¶ 7} We sua sponte asked the parties to brief the question whether the jurisdictional-priority rule precluded the Tenth District from hearing the appeal by Colt's Neck from the Franklin County Court of Common Pleas' judgment of dismissal since Colt's Neck had first filed an appeal from the joint board's order in the Licking County Court of Common Pleas and service of process was first perfected in that appeal. *See* 2026-Ohio-1023. On this issue, we conclude that the jurisdictional-priority rule does not control the outcome of this case. Any error by the Franklin County Court of Common Pleas or the Tenth District in not applying the jurisdictional-priority rule merely rendered the resulting judgments voidable, not void, and any claim that the courts violated the jurisdictional-priority rule has been forfeited by the parties' failure to object to the proceedings moving forward in those courts. The case therefore could properly proceed in Franklin County.

{¶ 8} This case presents three straightforward questions asserted in the propositions of law and the order certifying a conflict: (1) Was the Franklin County Court of Common Pleas required to convene a two-judge panel to hear the appeal by Colt's Neck from the joint board's order? (2) Is there a right to appeal a joint board of county commissioners' order to proceed on a petition to improve a ditch

4

that is issued after a first hearing? and (3) Are landowners who oppose such a petition "affected" by such an order, giving them standing to appeal the order?

{¶ 9} The answer to each question is yes. R.C. 6133.10(A) provides that any appeal from an order of a joint board of county commissioners that does not involve claims for damages or compensation must be heard by a panel of judges consisting of one judge of the court of common pleas from each of the counties affected by the ditch improvement. And under R.C. 6131.25(A) and 6133.03(D), *any* affected landowner may appeal *any* order issued by a joint board of county commissioners to a court of common pleas. In addition, a landowner whose procedural rights have allegedly been violated at the first hearing on the proposed ditch improvement is an affected landowner with the right to appeal the order resulting from that hearing. Further, a landowner that opposes a proposed ditch improvement must expend additional time and resources to continue its opposition to the improvement after the first hearing, so it is affected by the order in this way too.

{¶ 10} Consequently, we affirm the judgment of the Tenth District and remand the matter to the Franklin County Court of Common Pleas to convene a two-judge panel of common-pleas-court judges from Licking and Franklin Counties.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 11} Cole Ditch has its headwaters in Licking County and flows through Licking and Franklin Counties before draining into Blacklick Creek. Its watershed spans 1,132 acres, with 238 acres in Licking County and 894 acres in Franklin County. The watershed includes 70 parcels in Licking County and 341 parcels in Franklin County.

{¶ 12} In April 2023, the Jefferson Township Board of Trustees and landowner Julie Dockter petitioned the Franklin County Board of Commissioners to improve the water drainage of Cole Ditch to alleviate stormwater flooding of

roads and parcels. The petition was subsequently amended to add Jack Martin, another landowner within the watershed. The petition contained a list of names and addresses of landowners who would benefit from or be damaged by the proposed ditch improvement, and the petitioners alleged that the improvement was necessary, would benefit the petitioners, and would be conducive to the public welfare.

{¶ 13} The Franklin County Engineer's Office held two informational meetings and prepared a report that included a preliminary cost estimate, a statement of feasibility, and a cost-benefit analysis for the proposed ditch improvement. It served notice of the proposed ditch improvement on landowners whose parcels were within the Cole Ditch watershed, since the landowners within the watershed would be assessed the costs of the improvement. Relevant here, the engineer gave notice to Colt's Neck and to 89 of the 104 members of Colt's Neck.

{¶ 14} Because the proposed ditch improvement could benefit or damage property in Licking and Franklin Counties, a joint board consisting of members of each county's board of county commissioners was convened to consider the ditch-improvement petition. *See* R.C. 6133.02(A). Colt's Neck moved to dismiss the petition, asserting that continuing with the proceedings would violate its members' right to due process because some of its landowner members had not been given notice of the petition, notwithstanding that common areas would be affected by the improvement and that the costs of improving those common areas would be assessed on all landowners.

{¶ 15} At the first hearing on the petition, the joint board denied Colt's Neck's motion to dismiss the petition. Abigail Obert of the Franklin County Engineer's Office testified that the proposed ditch improvement would clear obstructions and dredge sediments from the ditch, shape the ditch and ground surfaces, and install piping and culverts. She estimated that the improvement would cost $3,228,000, with the costs assessed to each landowner within the Cole Ditch watershed, which includes governmental entities that own properties within the

watershed and 411 residents. According to Obert, the Franklin County Engineer's Office recommended proceeding with the improvement, believing that it would adequately serve the watershed's drainage needs and that the benefits of the improvement would exceed the estimated costs.

{¶ 16} The joint board admitted into evidence letters from residents of the Cole Ditch watershed and heard testimony from some of the affected landowners; the overwhelming majority of commenters opposed the proposed ditch improvement. The joint board then adopted a resolution finding that the improvement was necessary and conducive to the public welfare and that its benefits outweighed its costs. It therefore ordered the Franklin County Engineer to proceed with preparing reports, plans, and schedules needed for the improvement.

{¶ 17} Colt's Neck appealed the joint board's order to the courts of common pleas in Licking and Franklin Counties.

{¶ 18} In the Licking County Court of Common Pleas, Colt's Neck asserted that the joint board had failed to give proper notice to 17 landowners that would be affected by the proposed ditch improvement, that the first hearing was neither fair nor unbiased, that the petitioners had failed to sustain their burden of proof, that the joint board had lacked jurisdiction to proceed with the first hearing and make a decision on the ditch-improvement petition, and that the joint board's order was otherwise unconstitutional and erroneous. In addition to seeking reversal of the joint board's order, Colt's Neck requested damages in an amount exceeding $25,000.

{¶ 19} About two hours after it filed its notice of appeal from the joint board's order in the Licking County Court of Common Pleas, Colt's Neck filed substantively the same notice of appeal in the Franklin County Court of Common Pleas.

{¶ 20} Both appeals were dismissed by the respective courts of common pleas. *Colt's Neck*, Licking C.P. No. 23 CV 1462, at 1 (Apr. 25, 2024); Franklin C.P. No. 23CVF-12-9463, at 3 (Mar. 28, 2024).

{¶ 21} The Fifth District subsequently dismissed Colt's Neck's appeal from the Licking County Court of Common Pleas' judgment of dismissal, concluding that the trial court was not required to convene a joint panel of common-pleas-court judges from Licking and Franklin Counties to rule on the appeal from the joint board's order, because Colt's Neck had requested damages in its notice of appeal. *Colt's Neck*, 2025-Ohio-113, at ¶ 11 (5th Dist.). The Fifth District further decided that Colt's Neck had no right to appeal the joint board's order that was issued after the first hearing, for three reasons: (1) R.C. 6131.11 provides an express right of appeal to any landowner affected by the dismissal of a ditch-improvement petition after a first hearing by a joint board, but the petition here had not been dismissed, *id.* at ¶ 14; (2) R.C. 6131.25 sets forth questions that may be appealed by affected landowners, including whether "assessments [were] levied according to benefits," but because no assessments had been made in this case, the landowners at issue had not been affected, *see id.* at ¶ 15; and (3) R.C. 6131.31 provides guidance regarding the appeal of petition dismissals and addresses the appeal of a joint board of county commissioners' order to move forward on a petition after a final hearing and order, but the petition here had not been dismissed and a final hearing had not taken place, nor had a final order been issued, *id.* at ¶ 16. Lastly, the Fifth District held that the matter was not ripe for appellate review, because no final decisions had been made regarding the proposed ditch improvement and no assessments had been made regarding any of the properties within the watershed. *Id.* at ¶ 18, 20-21.

{¶ 22} The Tenth District took a different tack, ultimately reversing the Franklin County Court of Common Pleas' judgment of dismissal and remanding the matter to that court for further proceedings. *See* 2025-Ohio-1236 at ¶ 30 (10th Dist.). The Tenth District determined that the trial court had erred under R.C.

6133.10(A) in failing to convene a panel of common-pleas-court judges from Licking and Franklin Counties because the appeal from the joint board's order did not involve a claim for compensation or damages. *Id.* at ¶ 19-20. The Tenth District noted that R.C. 6131.25(A) permits an appeal of "any order" of a joint board of county commissioners and that nothing in R.C. Ch. 6131 or 6133 limits an appeal after a joint board's first hearing to circumstances in which the board dismisses a ditch-improvement petition. *See id.* at ¶ 21. Lastly, the Tenth District concluded that Colt's Neck had standing to appeal the order that was issued after the joint board's first hearing, because Colt's Neck was an affected landowner under R.C. 6131.25(A). *See id.* at ¶ 29.

{¶ 23} We accepted the discretionary appeal filed by the Licking County and Franklin County boards of commissioners and the Franklin County Engineer to review the following propositions of law:

> PROPOSITION OF LAW NO. 1: The [Tenth District] erred in determining that a panel of judges from two or more counties must be convened under R.C. 6133.10, when the appellant claims damages following a first hearing.
>
> PROPOSITION OF LAW NO. 2: The Tenth District erred in determining that Ohio Revised Code Chapters 2506, 6131 and 6133 provide a statutory right to the appeal of a decision made following a first hearing in a joint county ditch petition matter.
>
> PROPOSITION OF LAW NO. 3: The Tenth District erred in determining that R.C. 6131.25, gives any "affected owner" standing to appeal.

*See* 2025-Ohio-3107.

{¶ 24} In addition, the Tenth District certified that a conflict exists between its judgment and the judgment of the Fifth District. We agreed that a conflict exists and ordered the parties to brief the following issues:

"(1) whether a panel of judges from two or more counties must be convened under R.C. 6133.10, when the appellant claims damages following a first hearing, (2) whether R.C. Chapters 2506, 6131, and 6133 provide a statutory right to the appeal of a decision made following a first hearing in a joint county ditch petition matter, and (3) what constitutes an 'affected owner' under R.C. 6131.25 thereby granting a party standing to appeal."

*Id.*, quoting No. 24AP-273 (10th Dist. July 16, 2025).

{¶ 25} After oral argument, we ordered the parties to file supplemental briefs on the question "whether the Tenth District Court of Appeals had jurisdiction to hear the appeal under the jurisdictional-priority rule," 2026-Ohio-1023.

## II. LAW AND ANALYSIS

### A. The Jurisdictional-Priority Rule

{¶ 26} Our concern in ordering supplemental briefing on the jurisdictional-priority rule was whether the Franklin County Court of Common Pleas and the Tenth District had the power to hear an appeal arising from the joint board's order since a separate appeal from the joint board's order was first filed in the Licking County Court of Common Pleas and service of process was first perfected in that appeal. *See State ex rel. Balson v. Harnishfeger*, 55 Ohio St.2d 38, 39-40 (1978) ("Service of process is . . . made a condition precedent to vesting of jurisdiction in determining which of two courts has the exclusive right to adjudicate the whole case.").

{¶ 27} This matters because "'[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.'" *In re Adoption of M.G.B.-E.*, 2018-Ohio-1787, ¶ 25, quoting *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279 (1977), syllabus; *see also State ex rel. McGirr v. Winkler*, 2017-Ohio-8046, ¶ 19 (the jurisdictional-priority rule applies to state courts of concurrent jurisdiction). "The jurisdictional-priority rule applies when cases in multiple courts of concurrent jurisdiction involve the same parties and when either the causes of action are the same or the cases present part of the same whole issue." *M.G.B.-E.* at ¶ 25.

{¶ 28} The jurisdictional-priority rule refers to the "'jurisdiction'" of "'the tribunal whose power is first invoked.'" *Id.*, quoting *Phillips* at syllabus. "We have recognized that the word 'jurisdiction,' set apart by itself, is a vague term, a word of many, too many, meanings." (Cleaned up.) *Ostanek v. Ostanek*, 2021-Ohio-2319, ¶ 20. "It encompasses '[s]everal distinct concepts, including territorial jurisdiction, monetary jurisdiction, personal jurisdiction, and subject-matter jurisdiction.'" (Bracketed text added in *Ostanek*.) *Id.*, quoting *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 2008-Ohio-6323, ¶ 5. But it also has been used to refer to "'jurisdiction over a particular case.'" *Id.*, quoting *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 18.

{¶ 29} "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 14. It focuses on "'the rules that actually allocate judicial authority among different courts.'" *Id.*, quoting 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4428, at 6 (3d Ed. 2017). A court's subject-matter jurisdiction "'is determined without regard to the rights of the individual parties involved in a particular case.'" *Id.*, quoting *Kuchta* at ¶ 19.

"Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11.

{¶ 30} "Personal jurisdiction refers to the court's power to render a valid judgment against a particular individual." *State v. Henderson*, 2020-Ohio-4784, ¶ 36; *see also Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). But unlike subject-matter jurisdiction, personal jurisdiction does not involve the structural power of the court to hear a class or type of case. Rather, the requirement for a court to obtain personal jurisdiction to issue a valid judgment flows from due process. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 261 (2017); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power . . . as a matter of individual liberty." *Ins. Corp. of Ireland* at 702. So unlike subject-matter jurisdiction, a personal-jurisdiction defense may be lost by waiver or a voluntary appearance. *Id.* at 702-703; *see also Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 2007-Ohio-257, ¶ 6; *Maryhew* at 156.

{¶ 31} Because it relates to the power of a court to render a valid judgment, a judgment entered by a court lacking subject-matter jurisdiction is void. *Ostanek*, 2021-Ohio-2319, at ¶ 22.

{¶ 32} "A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Kuchta*, 2014-Ohio-4275, at ¶ 19, citing *Pratts*, 2004-Ohio-1980, at ¶ 12. This reference to a court's exercise of its jurisdiction over a particular case "involves consideration of the rights of the parties." *Id.* An error committed in a court's exercise of the jurisdiction conferred renders the judgment voidable, not void. *State v. Harper*, 2020-Ohio-2913, ¶ 26.

{¶ 33} The jurisdictional-priority rule does not involve the constitutional or statutory powers of the trial court to render a valid judgment. Rather, its application turns on the facts of the particular case and is guided by answering the following questions: Are the parties the same? Are the causes of action the same? Is the relief sought in each case the same? *See State ex rel. Dunlap v. Sarko*, 2013-Ohio-67, ¶ 10-11. While the parties must be the same, we have said that the jurisdictional-priority rule may apply even when the causes of action and relief requested are not exactly the same. *Id.* In one case, for example, we looked to statements made in a hearing to determine whether claims were mutually exclusive. *See State ex rel. Shimko v. McMonagle*, 2001-Ohio-301, ¶ 16. In another, we declined to apply the jurisdictional-priority rule because "it [was] not clear . . . that the two suits comprise[d] part of the same 'whole issue.'" *State ex rel. Sellers v. Gerken*, 1995-Ohio-247, ¶ 11.

{¶ 34} We have suggested that when the jurisdictional-priority rule applies, the second court to receive the case "patently and unambiguously lacks jurisdiction," such that a writ of prohibition is an available remedy. *State ex rel. Consortium for Economic & Community Dev. for Hough Ward 7 v. Russo*, 2017-Ohio-8133, ¶ 8. But again, "the word 'jurisdiction,' set apart by itself, is a vague term, a word of many, too many, meanings." (Cleaned up.) *Ostanek*, 2021-Ohio-2319, at ¶ 20.

{¶ 35} Unlike subject-matter jurisdiction, the jurisdictional-priority rule does not exist because the Ohio Constitution or a statute created it. Rather, it is a common-law rule, *Allen v. Pulaski Cty. Circuit Court, Ninth Div.*, 2009 Ark. 167, 11 (2009), that "exists to promote judicial economy and avoid inconsistent results," *Russo* at ¶ 10, and it prevents a defendant from being "harassed and oppressed by two actions for the same cause where [the] plaintiff has a complete remedy by one of them," *State ex rel. Maxwell v. Schneider*, 103 Ohio St. 492, 496 (1921). It is a rule that rests on policy, not a constitutional or statutory provision.

{¶ 36} We therefore clarify that the jurisdictional-priority rule relates to a court's exercise of jurisdiction. Consequently, any error committed when two courts of concurrent jurisdiction hear the same case will render a judgment from the second court voidable, not void. It follows that the jurisdictional-priority rule may be intentionally waived and that any error with respect to application of the rule may be unintentionally forfeited by the actions of the parties. *See State v. Rogers*, 2015-Ohio-2459, ¶ 20-21 (waiver is the intentional relinquishment of a known right; forfeiture occurs by failing to timely assert a right or object to an error).

{¶ 37} Here, the Licking and Franklin County Courts of Common Pleas each had subject-matter jurisdiction over appeals from the joint board's order regarding the ditch-improvement petition: R.C. 6131.25 and 6133.10 expressly authorized an appeal from the joint board's order to a court of common pleas. And nothing in R.C. Ch. 6131 or 6133 divests either court of common pleas of the power to hear the appeals filed by Colt's Neck. These Revised Code chapters, however, provide no guidance regarding in which court an appeal challenging an order to proceed on a ditch-improvement petition must be filed. The statutes in these chapters do not, for example, say that the appeal must be filed in the lead county, i.e., "the county in which the majority of the initial length of a joint county drainage improvement would be located," R.C. 6133.01(B). Nor do the statutes in these chapters say that an appeal to a panel of common-pleas-court judges must be filed in the county where the affected property is, as is the case with claims on "compensation or damages" under R.C. 6133.09(C). Simply put, the lawyers representing Colt's Neck had no choice but to either file an appeal in both Licking and Franklin Counties or take the risk of later being told that they had filed the appeal in the wrong county.

{¶ 38} It is ultimately up to the General Assembly to clarify the appellate process that applies when an affected landowner wishes to appeal from an order to

proceed on a ditch-improvement petition to a joint panel of common-pleas-court judges under R.C. 6133.10(A). Until that happens, we conclude that an affected landowner may file an appeal in any of the counties in which the proposed ditch improvement will occur.

{¶ 39} None of the parties asserted in the Franklin County Court of Common Pleas that the jurisdictional-priority rule precluded the case from proceeding in that court. Also, no one raised any issue with the appeal of that court's judgment going forward in the Tenth District. Consequently, any error regarding the jurisdictional-priority rule has been forfeited.

{¶ 40} We conclude that the jurisdictional-priority rule did not deprive the Franklin County Court of Common Pleas or the Tenth District of the power to hear this case. Accordingly, this matter is properly before this court to decide the propositions of law and the certified-conflict questions. Therefore, we turn to the issues presented by the discretionary appeal from the judgment of the Tenth District and the certified-conflict questions.

### B. Standard of Review

{¶ 41} An appellate court reviews de novo an order granting a Civ.R. 12(B)(6) motion to dismiss. *Lunsford v. Sterilite of Ohio, L.L.C.*, 2020-Ohio-4193, ¶ 22. "In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true all factual allegations in the complaint." *Id.* "A complaint should not be dismissed unless it appears 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.'" *Id.*, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

{¶ 42} Statutory interpretation is a question of law that we also review de novo. *Caldwell v. Whirlpool Corp.*, 2024-Ohio-1625, ¶ 13. We ask "not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus.

So "[w]hen the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12, and apply it as written, *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 18. We are mindful that "[w]hen a term is not defined in the statute, we use the term's plain and ordinary meaning." *State v. Turner*, 2020-Ohio-6773, ¶ 18.

### C. Multicounty Ditch Improvements

{¶ 43} R.C. Ch. 6133 governs ditch improvements that span more than one county. In addition, the statutes in R.C. Ch. 6131 governing single-county ditch improvements apply to joint-county ditch improvements as applicable. *See* R.C. 6133.03(A) ("A joint board of county commissioners may do all the things that a board of county commissioners may do in a single county improvement, and shall be governed by and be subject to sections 6131.01 to 6131.64 of the Revised Code, relating to single county ditches insofar as applicable."); R.C. 6133.03(B) ("a petition for a joint county improvement shall proceed before the joint board of county commissioners the same as if the joint board were a board of county commissioners representing a county that included all the territory of all the counties represented by the commissioners on the joint board, except as otherwise modified in accordance with" R.C. Ch. 6133).

{¶ 44} Upon the filing of a petition proposing a joint-county ditch improvement, the board of county commissioners from each county must organize a joint board of county commissioners. R.C. 6133.04(A). The joint board must schedule a view of the proposed ditch improvement and hold a first hearing on the petition between 30 and 90 days after the date set for the view. R.C. 6131.07(B). The joint board's clerk must give affected landowners written notice, which must include, among other things, the date, time, and location of the view and the first hearing, certain information about the proposed ditch improvement, and a statement

about the right of affected landowners to submit public comments to the joint board. R.C. 6131.07(C).

{¶ 45} Upon receiving notice of the petition, the county engineer for the "lead county"—"the county in which the majority of the initial length of a joint county drainage improvement would be located," R.C. 6133.01(B)—must prepare a preliminary report on the proposed ditch improvement, which must include an estimated cost, comments on the improvement's feasibility, an opinion whether the benefits from the improvement are likely to outweigh the estimated costs, and a list of favorable and nonfavorable factors apparent to the engineer relating to the improvement, R.C. 6131.09(A).

## 1. The First Hearing

{¶ 46} At the first hearing, the joint board must hear the engineer's preliminary report and any evidence offered by affected landowners for or against granting the proposed ditch improvement. R.C. 6131.101(A). "At the conclusion of the first hearing, the board shall vote to determine whether to proceed with the project survey and design or to dismiss the petition, taking into consideration the petition, the preliminary report, and comments on the proposed improvement." R.C. 6131.101(C).

{¶ 47} The joint board may approve the proposed ditch improvement if it finds that the improvement (1) is necessary for certain statutorily specified reasons related to handling water flowing into and through the ditch, (2) is conducive to the public welfare, and (3) has benefits that will outweigh the costs. R.C. 6131.02. If the joint board does not make the statutorily required findings at the conclusion of the first hearing, it must dismiss the petition. R.C. 6131.11(A).

{¶ 48} If the joint board finds at the conclusion of the first hearing that the proposed ditch improvement is necessary, is conducive to the public welfare, and has benefits that will outweigh the costs, it "may decide to proceed with the project survey and design for a proposed improvement." R.C. 6131.12(A). Once the joint

board decides to proceed, R.C. 6131.12(C)(2) requires the joint board to order the lead county's engineer to prepare the reports, plans for structures and the work to be done, and schedules of damages and assessments as required by R.C. 6131.14 and 6131.15. It also must "[d]etermine the route and termini of the proposed improvement and of the branches, spurs, and laterals thereof and the manner of constructing the same." R.C. 6131.12(C)(1).

## 2. Appellate Rights

{¶ 49} When a case involves a joint-county ditch improvement under R.C. Ch. 6133, "[a]ll appeals to the court of common pleas except appeals on claims for compensation or damages shall be heard by a panel of judges consisting of one judge of the court of common pleas from each of the affected counties." R.C. 6133.10(A). "Claims for compensation for land taken or for damages to land may be appealed by an affected owner, or by the prosecuting attorney, to the court of common pleas of the county in which the land for which the owner claims compensation or damages is located." R.C. 6133.09(B)

{¶ 50} The statutory scheme expressly provides that a landowner affected by the dismissal of a ditch-improvement petition after the first hearing may appeal the dismissal to a court of common pleas. R.C. 6131.11(B). It does not provide an affected landowner with a specific right to appeal an order to proceed on a petition that is issued after the first hearing.

{¶ 51} However, R.C. 6131.25(A) is a catch-all appeals provision, which states:

> Any affected owner may appeal to the court of common pleas within thirty days of the date that any order was issued by the board of county commissioners under this chapter, and may appeal any one or more of the following questions:
>
> (1) Is the improvement necessary?

18

(2) Will the improvement be conducive to the public welfare?

(3) Is the cost of the improvement greater than the benefits conferred?

(4) Is the route, termini, or mode of construction the best to accomplish the purpose of the improvement?

(5) Are the assessments levied according to benefits?

(6) Is the award for compensation or damages just?

**{¶ 52}** With this understanding of the statutory scheme in mind, we turn to the specific issues presented in this case.

*D. The Requirement for a Panel of Common-Pleas-Court Judges*

**{¶ 53}** The first proposition of law and the first certified question concern whether a panel of common-pleas-court judges, one each from Licking and Franklin Counties, must be convened to hear the appeal from the joint board's order filed by Colt's Neck.

**{¶ 54}** Again, R.C. 6133.10(A) requires that any appeal from an order of a joint board of county commissioners be "heard by a panel of judges consisting of one judge of the court of common pleas from each of the affected counties" except when the appeal relates to claims for compensation or damages. This language is plain and unambiguous.

**{¶ 55}** Nonetheless, the Fifth and Tenth Districts disagreed whether the appeal by Colt's Neck involved a claim for compensation or damages, because in its notice of appeal, Colt's Neck demanded "damages in excess of $25,000." But Colt's Neck never presented a claim for compensation or damages to the joint board. R.C. 6133.09(B) clarifies that when the General Assembly spoke about claims for compensation or damages, it meant "compensation for *land taken* or for damages *to land*." (Emphasis added.) Those claims for compensation or damages

must then be heard at the final hearing, after the ditch-improvement petition has been approved. *See* R.C. 6131.19(A). The joint board must consider all the evidence and determine "the amount of damages for each claim filed by an owner" and "the value of any land or any other property to be taken for the proposed improvement." R.C. 6131.19(B).

{¶ 56} But here, Colt's Neck appealed from the joint board's order that was issued after the *first* hearing, in which the joint board did not rule on any claims for compensation or damages but instead directed the Franklin County Engineer to proceed with preparing reports, plans, and schedules needed for the proposed ditch improvement. *See* R.C. 6131.12(C)(2). Consequently, Colt's Neck could not have appealed on claims for compensation or damages. Therefore, upon the filing of an appeal by Colt's Neck from the joint board's order, a panel of judges consisting of one judge from the Licking County Court of Common Pleas and one judge from the Franklin County Court of Common Pleas had to be convened to hear the appeal.

*E. Appeal to the Court of Common Pleas*

{¶ 57} The second proposition of law and the second certified question concern whether there is a right to appeal from an order that is issued after a joint board's first hearing that directs a county engineer to proceed with preparing reports, plans, and schedules needed for a proposed joint-county ditch improvement.

{¶ 58} As noted above, the statutory scheme provides an affected landowner an express right to appeal the dismissal of the petition after the first hearing. R.C. 6131.11(B). In addition, R.C. 6131.25(A) is a catch-all provision permitting "[a]ny affected owner [to] appeal to the court of common pleas within thirty days of the date that *any order* was issued by the board of county commissioners under [R.C. Ch. 6131]." (Emphasis added.)

{¶ 59} This court has recognized that "'"[a]ny" means "one or some indiscriminately of whatever kind."'" *Weiss v. Pub. Util. Comm.*, 2000-Ohio-5,

¶ 13, quoting *State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 1997-Ohio-278, ¶ 9, quoting *Webster's Third New International Dictionary* (1971). The word "any" is inclusive, *The Way Internatl. v. Limbach*, 50 Ohio St.3d 76, 80 (1990), and "is often used as meaning 'all,'" *Wachendorf v. Shaver*, 149 Ohio St. 231, 240 (1948), or "every" (emphasis deleted), *State v. Wells*, 146 Ohio St. 131, 137 (1945).

{¶ 60} R.C. 6131.25(A) therefore permits an appeal of any, all, and every order issued by a joint board of county commissioners under R.C. Ch. 6131 and 6133.

{¶ 61} The county commissioners and the Franklin County Engineer point to *Atley v. Clinton Cty. Commrs.*, 77 Ohio St. 285, 294 (1907), for the proposition that an appeal will not lie in a ditch-improvement proceeding "yet in its initial stage" but instead must await a final order. When *Atley* was decided, R.S. 4463—a predecessor to R.C. 6131.25—stated, "'Any person or corporation aggrieved [by] [the decisions of the commissioners] may appeal from *any final order or judgment* of the commissioners made in the proceeding and entered upon their journal . . . .'" (Second bracketed text in original; emphasis added.) *Id.* at 296, quoting R.S. 4463.

{¶ 62} And before 1981, former R.C. 6131.25 stated, "'Any interested owner may appeal to the court of common pleas from a final order made by the board of county commissioners, as provided in [R.C. 6131.01 through 6131.64] . . . .'" (Emphasis deleted.) *State ex rel. Williams Cty. Bd. of Commrs. v. Weir*, 6 Ohio St.3d 381, 383, fn. 2 (1983), quoting former R.C. 6131.25. Tellingly, the General Assembly amended former R.C. 6131.25 in 1981 to remove the final-order requirement and replace it with the right to appeal "any" order. Am.Sub.H.B. No. 268, 138 Ohio Laws, Part I, 2337, 2364. The General Assembly kept the any-order requirement when it last amended R.C. 6131.25, which is also when it renumbered the statute and created R.C. 6131.25(A). *See* 2020 Sub.H.B. No. 340 (effective Mar. 24, 2021).

{¶ 63} The General Assembly plainly meant what it said when it provided for an appeal from *any* order of a joint board of county commissioners. Consequently, any affected landowner may appeal a joint board's order directing a county engineer to proceed with preparing reports, plans, and schedules needed for a proposed joint-county ditch improvement.

*F. Standing to Appeal*

{¶ 64} The third proposition of law and the third certified question ask whether Colt's Neck is an affected landowner with a right to appeal under R.C. 6131.25(A).

{¶ 65} Article IV, Section 4(B) of the Ohio Constitution provides: "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and *such powers of review of proceedings of administrative officers and agencies as may be provided by law*."  (Emphasis added.)

{¶ 66} In this case, R.C. 6131.25(A) grants courts of common pleas the power to review orders issued by a joint board of county commissioners.  It provides, "Any affected owner may appeal to the court of common pleas within thirty days of the date that any order was issued by the board of county commissioners under [R.C. Ch. 6131] . . . ." *See also* R.C. 6133.03(D) ("All owners affected by the proceedings for a joint county improvement shall have all the rights and remedies given them in the case of single county improvements.  All rights of appeal and all other rights or remedies as provided in [R.C. Ch. 6131] apply to joint county improvements.").  Therefore, under R.C. 6131.25(A) and 6133.03(D), an "owner" who is "affected" by any order issued by a joint board of county commissioners has standing to appeal that order.

{¶ 67} In determining whether a party has standing, we have recognized "that the legislature may confer standing by statute." *Voss v. Quicken Loans, L.L.C.*, 2026-Ohio-531, ¶ 13. In particular, "the legislature may by statute authorize

a plaintiff to sue for the legal injury that he has suffered." *Id.* at ¶ 16. While the legislature "may not authorize the judiciary to adjudicate matters that extend beyond the traditional bounds of the judicial power," *id*. at ¶ 13, so long as the legal injury stems from an individualized right, a case involving that injury is properly within the judicial power, *see id.* at ¶ 15, quoting Woolhandler & Nelson, *Does History Defeat Standing Doctrine?*, 102 Mich.L.Rev. 689, 694 (2004) ("'legislatures may create statutory duties or "entitlements" owed to private persons; these entitlements can be treated as private rights for standing purposes'").

{¶ 68} Exercising its legislative authority, the General Assembly enacted R.C. 6131.25(A). Consequently, the standing inquiry turns on determining the meaning of the term "affected owner."

{¶ 69} "Owner" is defined in R.C. 6131.01(A) as including "any owner of any right, title, estate, or interest in or to any real property and includes persons, partnerships, associations, [and] private corporations."

{¶ 70} The word "affected" is not defined in R.C. Ch. 6131 or 6133, but we may look at how it is used throughout the statutes in these chapters to discern its meaning. R.C. 6131.01(A) states that an "owner" "also includes any public corporation and the director of any department, office, or institution of the state *affected* by an improvement but not owning any right, title, estate, or interest in or to any real property." (Emphasis added.) R.C. 6131.01(F)(1)(a) speaks of "[t]he watershed or entire land area drained or *affected* by the improvement." (Emphasis added.) R.C. 6131.07(E) provides that "[t]he clerk shall publish a legal notice in at least one newspaper of general circulation in the area *affected* by the proposed improvement" (emphasis added), while R.C. 6131.15(C) says that "[e]ach tract of land and political subdivision *affected* by an improvement and the state shall be assessed in the proportion that each is benefited by the improvement" (emphasis added).

**{¶ 71}** From these repeated uses, the word "affected" as it appears in R.C. 6131.25(A) refers to someone or something being impacted by the proposed changes to the ditch.

**{¶ 72}** This meaning of "affected" also aligns with the standard dictionary definition of the word. "Affect" means "to produce an effect . . . upon" and "to have a detrimental influence on," *Webster's Third New International Dictionary* (2002); it denotes an impact on something. An "affected owner" then is a landowner whose land is impacted by the proposed changes to the ditch.

**{¶ 73}** Under the statutory scheme, affected owners like Colt's Neck have rights conferred by R.C. Ch. 6131, including the right to receive notice of the first hearing, R.C. 6131.07(C)(1); the right to provide comment on the proposed ditch improvement at the first hearing, either in person or by filing written comments with the clerk of the joint board, R.C. 6131.08; and the right to present evidence for or against the proposed improvement, R.C. 6131.101(A)(2).

**{¶ 74}** In its notice of appeal to the courts of common pleas, Colt's Neck asserted that its rights had been violated at the first hearing. It contended that the hearing had been unfair and biased and that the petitioners had failed to sustain their burden of proof. In short, Colt's Neck has alleged a particularized legal injury— the violation of its rights as an "affected owner" under R.C. 6131.25(A).

**{¶ 75}** Consequently, Colt's Neck has standing to appeal the joint board's order under R.C. 6131.25(A) and 6133.03(D).

### III. CONCLUSION

**{¶ 76}** R.C. 6133.10(A) provides that all appeals from orders of a joint board of county commissioners that do not involve claims of damages or compensation must be heard by a panel of judges consisting of one judge of the court of common pleas from each of the counties affected by the ditch improvement. And under R.C. 6131.25(A) and 6133.03(D), *any* affected

landowner may appeal *any* order issued by a joint board of county commissioners to a court of common pleas.

{¶ 77} Because Colt's Neck was an affected landowner, it had standing and statutory authority to appeal the joint board's order that was issued after the first hearing on the proposed ditch improvement for the Cole Ditch watershed. That appeal should have been heard by a joint panel of common-pleas-court judges from Licking and Franklin Counties.

{¶ 78} Therefore, we answer the certified questions in the affirmative and affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

_____

Richard D. Rogovin; and Loveland Law, L.L.C., and Bryan S. Hunt, for appellee.

Eastman & Smith, Ltd., Joseph R. Durham, and Elizabeth A. Johnson, for appellants Franklin County, Ohio Board of Commissioners and Franklin County Engineer.

Jenny Wells, Licking County Prosecuting Attorney, and Darcy T. Cook, Assistant Prosecuting Attorney, for appellant Licking County, Ohio Board of Commissioners.

_____